UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WELLEM MARCH PAULUS, §
ZAINAL TAMPUBULON, §
on behalf of themselves §
And a class of those similarly situated §
§ CIVIL ACTION NO. 08-CV-01104
Plaintiffs, §
§
vs. §
§
RIGSTAFF TEXAS LLC, §
RIGSTAFF LTD., §
SCHLUMBERGER LTD., §
SCHLUMBERGER TECHNOLOGY
CORPORATION,
SCHLUMBERGER TECHNOLOGIES,
INC.,
DOUGLAS WHITE,
JOSEPH P. DELORENZO, and
WALTER BLISS

Defendants.

## MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO DISMISS DEFENDANTS JOSEPH P. DELORENZO AND WALTER BLISS AND MEMORANDUM IN SUPPORT

Defendants Joseph P. DeLorenzo and Walter Bliss file, under Rule 56 of the Federal Rules of Civil Procedure, this Motion for Partial Summary Judgment in order to dismiss them from the pending lawsuit.

A.   Summary

The plaintiffs filed this lawsuit on November 21, 2008, alleging four claims: violation of the Fair Labor Standards Act (FLSA), breach of contract, unjust enrichment, and conversion. *Docket #1*. Specifically, the plaintiffs claim that its employers – RigStaff Ltd. and the Schlumberger defendants – improperly compensated them from January to August 2006. Defendants DeLorenzo and Bliss, former representatives of RigStaff Ltd. who have had their

depositions taken in this case, face potential liability in this case only under the FLSA. Specifically, they can be jointly and severally liable under the FLSA if they exercised sufficient "operational control" of RigStaff during the relevant time periods. Because neither DeLorenzo nor Bliss had such operational control, summary judgment is appropriate. In the alternative, even if the Court determines that there is fact issue as to whether either of them did have operational control, the Court should still dismiss them from this lawsuit because neither of them willfully violated the FLSA, thus preventing the necessary three-year statute of limitations for the plaintiffs' FLSA claim to survive against DeLorenzo and Bliss. Therefore, DeLorenzo and Bliss should be dismissed from this lawsuit.

B.  Legal Standards

   *1. Operational Control*

Under the FLSA, "'a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" *Chao v. Hotel Oasis*, 493 F.3d 26, 34 (1st Cir. 2007) (citing *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). In determining personal liability, a Court must evaluate "the individual's ownership interest, degree of control over the corporation's financial affairs and compensation practices, and role in 'caus[ing] the corporation to compensate (or not to compensate) employees in accordance with the FLSA.'" *Id.* (citing *Baystate Alternative Staffing v. Herman*, 163 F.3d 668 (1st Cir. 1998)). This includes determining whether the individual was "principally in charge of directing employment practices, such as hiring and firing employees, ... and setting employees' wages and schedules" and evaluating the extent he was "instrumental in causing the corporation to violate the FLSA." *Krohn v. David Powers Homes, Inc.*, 2009 WL 1883989, *5 (S.D. Tex. 2009) (*attached as*

*Exhibit A*).

*2. Willful Violation of the FLSA*

Under the FLSA, actions must be commenced within two years except for actions arising out of a willful violation of the FLSA, in which case a three-year statute of limitations applies. 29 U.S.C. § 255(a). Because the two named plaintiffs filed this cause of action in November 2008, and their and the opt-in plaintiffs' relevant work period was from January to August 2006, the plaintiffs must prove that the defendants willfully violated the FLSA in order to establish any potential FLSA violation.

The United States Supreme Court has stated that "[i[f an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful...." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 n. 13 (1988).[1] The <u>plaintiffs have the burden to prove the defendants acted willfully</u>. *Id.*, 486 U.S. at 135 (emphasis added); *Gilligan v. City of Emporia, Kan.*, 986 F.2d 410, 413 (10th Cir. 1993). The standard for a willful violation is whether the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *Pabst v. Oklahoma Gas & Elec. Co.*, 228 F.3d 1128, 1137 (10th Cir. 2000). "[A]n employer's mere negligence or a good faith – but incorrect – belief that they were in compliance with the FLSA, are not sufficient to rise to the level of a willful violation." *Difilippo v. Barclays Capital, Inc.*, 552 F. Supp. 2d 417, 425 (S.D.N.Y. 2008); *see also Terwilliger v. Home of Hope, Inc.*, 21 F. Supp. 2d 1294, 1303 (N.D. Okla. 1998) ("'[W]illful' is defined as 'voluntary, deliberate, and intentional, rather than merely negligent, conduct."). Furthermore, <u>seeking advice from an attorney should preclude a finding of willfulness</u>. *See*

---

[1] To any extent the plaintiffs try to rely on the Code of Federal Regulations over the Supreme Court's *McLaughlin* decision, such reliance is inappropriate. *See Moreno v. United States*, 82 Fed. Cl. 387, 397 n. 24 (Fed. Cl. 2008) (stating that the Supreme Court's interpretation of a statute trumps a subsequent agency interpretation inconsistent with the Court's precedent).

*Halfery v. Pulse Drug Co., Inc.*, 826 F.2d 2, 3 (5th Cir. 1987) (finding that consulting with an attorney supports a finding that an employer acted reasonably and in good faith); *Hill v. J.C. Penny Co., Inc.*, 688 F.2d 370, 375 (5th Cir. 1982) (finding that the defendant's reliance on the advice of counsel insulated it from an award of liquidated damages under the FLSA); *Van Dyke v. Bluefield Gas Co.*, 210 F.2d 620, 622 (4th Cir. 1954) (finding that the employer's failure to comply with the FLSA was based on a good faith by reliance on an attorney's advice).

C.  Background of RigStaff and its Arrangement with Schlumberger

In approximately early 2005, RigStaff, Ltd. (a limited partnership) and RigStaff Texas, LLC were formed under the laws of the state of Texas. *See Deposition of Joseph DeLorenzo, p. 11-12 (attached as Exhibit B)*. RigStaff Texas, LLC was the managing partner of RigStaff, Ltd. *Id*. At the point of formation, RigStaff, Ltd. had several limited partners, including DeLorenzo and Defendant Douglas White, however Bliss was not a limited partner at that time.[2] RigStaff was formed in order to help satisfy a shortage of rig personnel in the oil and gas business, both nationally and internationally. *Id., p. 17*. White was the president and CEO of RigStaff, and was in charge of the day-to-day operations of the company. *Id., p. 68*. DeLorenzo was the executive vice-president and was in charge of business development and relations. *Id., pp. 68-69; 77*.

In early 2005, DeLorenzo and White had a meeting with Schlumberger in which Schlumberger indicated they had a shortage of workers and could use RigStaff's assistance in obtaining additional workers. *Id., pp. 22-24*. Subsequently, White independently negotiated with Schlumberger in setting up a contract where RigStaff would provide the needed workers. *Id., pp. 25, 40-41*. The contract between Schlumberger and RigStaff was executed in October 2005. *DeLorenzo Dep. Ex. #4*. DeLorenzo was not involved in that process and was not aware

---

[2] For the remainder of this Motion, RigStaff, Ltd. and RigStaff Texas, LLC will be collectively referred to as "RigStaff."

of the fact that White had signed a contract with Schlumberger until after it was done. *Id., p. 26.*

As shown by several documents, from mid-late 2005, White was the sole individual involved in working with outside counsel to obtain H-2B visas for the workers/plaintiffs in order for them to work for Schlumberger in the United States and setting up the pay structure for the employees. *See Exhibit C.* These include the following documents:

- May 2, 2005 email from White to Schlumberger discussing the potential work arrangement and the need to determine the prevailing wage rate

- June 8, 2005 email from White to attorney Kelly Cobb discussing the geographic region of the work area and Schlumberger's pay scale for the positions

- June 13, 2005 email from White to Schlumberger discussing the potential candidates and the daily wage rate

- July 22, 2005 email from White to Cobb discussing the wage rate and attaching a wage calculation spreadsheet

- I-129 Petition for Nonimmigrant Worker signed by White and attached Acknowledgement signed by White and dated July 22, 2005

- July 26, 2005 emails between White and Oscar Rompis discussing the potential wage rate and work schedule

- Application for Alien Employment Certification signed by White and dated July 27, 2005

- September 8, 2005 email from White to Schlumberger summarizing a telephone conference in which the work arrangement was discussed

- September 8, 2005 letter from White to the U.S. Citizenship & Immigration Services requesting H-2B visas.

- October 5, 2005 emails between White and Cobb discussing the location of the workers and the need for them to obtain social security numbers

Specifically, White worked with the Department of Labor (through an attorney) to determine the prevailing wage rate in order to obtain the visas, worked with an agent and agency in Indonesia in order to locate and recruit the Indonesian workers, and had the workers sign a contract in

Indonesia. *See also DeLorenzo Dep. Ex. #5, #7, #8.* Importantly, White was the sole individual who made the decision to pay the workers a fixed day rate, rather than an hourly rate.

White eventually made the decision to leave RigStaff. *DeLorenzo Dep., pp. 114-15.* However, prior to White's departure, Bliss began working for RigStaff in mid-November 2005 and overlapped with White for approximately 5-6 weeks. *Id., p. 73; Deposition of Walter Bliss, pp., 6, 8 (attached as Exhibit D).* During this transition period, White explained to Bliss the details of the Schlumberger contract and the pay arrangement to the H-2B workers. *Id., pp. 8-9, 14-16, 92.* Bliss had no reason to believe there was any problem with the pay arrangement or that it may have been in violation of any laws. *Declaration of Walter Bliss, ¶1 (attached as Exhibit E).*

RigStaff was the facilitating entity that provided the H-2B workers and paid them; however, Schlumberger made the hiring and firing decisions, provided the job descriptions to RigStaff, supervised, trained, and determined the plaintiffs' duties, hours, and locations, and provided transportation and housing to the plaintiffs. *See DeLorenzo Dep., pp. 31, 33-34, 38, 44, 62; Bliss Dep., pp. 24-25; 68-70; 78-79.*

D. <u>DeLorenzo Did Not Have Operational Control and Did Not Willfully Violate the FLSA</u>

Based on the above legal standards and factual background discussed above, and the following facts, DeLorenzo did not have operational control and/or did not willfully violate the FLSA:

- Other than helping to form RigStaff, DeLorenzo's **only** job functions involved business development. *DeLorenzo Dep., pp. 68-69; 77.*

- Douglas White was the sole individual who negotiated the deal with Schlumberger, worked with outside counsel to obtain H-2B visas, and set up the pay plan for the workers. *DeLorenzo Dep., pp. 25, 40-41; Exhibit B*

- DeLorenzo had **no involvement** in determining the rates of pay for the

workers. *DeLorenzo Dep., p. 38, 41, 45-46.*

- DeLorenzo was never aware that there may have been a problem in the method of paying the employees. *Id., p. 55-56, 59, 75-76.*

- The wage rate was never discussed with the limited partners of RigStaff, Ltd. *Id., p. 60.*

- DeLorenzo never met any of the workers or had any direct contact with them. *Id., p. 76, 88.*

- DeLorenzo never earned a salary from RigStaff. *Id., pp. 79-80.*

- Schlumberger had complete and total control over the workers'/plaintiffs' employment.

Taking these facts into account, and especially considering he had absolutely no involvement in determining the pay structure of the workers and was not the cause of any FLSA violation, DeLorenzo did not exercise operational control in order to be liable under the FLSA and/or, alternatively, he did not willfully violate the FLSA. Therefore, he cannot be liable under the FLSA, and he respectfully requests that the Court dismiss the claims pending against him in this lawsuit.

E.  <u>Bliss Did Not Have Operational Control and Did Not Willfully Violate the FLSA</u>

*1. Bliss did not have operational control.*

There is no dispute that Bliss joined RigStaff in mid-November 2005, <u>after</u> White had already made all the decisions regarding the pay structure of the workers and after finalizing the deal with Schlumberger; therefore, Bliss could not have been involved in causing any violation of the FLSA. *Bliss' Declaration, ¶1.* Bliss also never observed any of the plaintiffs working in Schlumberger's fields. *Bliss Dep., 27.* Furthermore, Bliss had no personal ownership interest in RigStaff during the term of the Schlumberger contract. *Bliss' Declaration, ¶6.* As a result, and also including the fact that Schlumberger had total control over the plaintiffs' employment, Bliss could not have any operational control based on the events giving rise to this lawsuit. *See Hotel*

*Oasis*, 493 F.3d at 34. Therefore, summary judgment is appropriate on this issue, and Bliss must also be dismissed from this lawsuit.

    2.    *Bliss did not willfully violate the FLSA.*

Even if the Court determines that there is a fact issue regarding Bliss' level of operational control, he would still not be liable because he did not willfully violate the FLSA. A detailed discussion of Bliss' actions is necessary in order to show why he did not and could not willfully violate the FLSA.

As mentioned above, when Bliss joined RigStaff in mid-November 2005, he overlapped with White for approximately 5-6 weeks, while White assisted in the transition period. During this time, White explained the arrangement – that he alone had set up – of paying the workers a fixed day-rate, regardless of the number of hours worked, and Bliss had no reason to believe there was any problem with such a plan. *Bliss Dep., pp. 8-9, 14-16; 92.* In fact, Bliss had no reason to believe the workers would even be working any overtime. *Id., p. 15.* At no point in time did White tell Bliss about any contract the workers may have signed in Indonesia, show him the visa applications to the DOL, or tell him what had been represented to the DOL. *Id., p. 12.*

Approximately a month after the plaintiffs had been working, Bliss was informed by Oscar Rompis, the Indonesian agent who assisted in locating the workers, that some of the workers were complaining about their pay. Concerned about this issue, Bliss looked into it and determined that the amount they were actually being compensated (the net flat rate of $100 per day, plus taxes, social security, rent, food allowance, and medical insurance) was higher than if the employees would be paid a regular rate of $12.53/hour plus overtime and worked either 40 hours or 60 hours per week. *Bliss Dep., pp. 33-34, 39.* He put together a spreadsheet with this information to present to the workers. *Bliss Dep. Ex. #12.* He met with three of the workers on

February 19, 2006, explained the pay arrangement to them, showed them the spreadsheet, and left the meeting thinking that the workers were content with their compensation because none of them complained or questioned his explanation and none of them told Bliss that his understanding that they were working less than 60 hours per week was incorrect. *Bliss Dep., pp. 35, 43-44, 47, 99, 141, 142-43, 167-68, 174-75.* Importantly, at that time, Bliss had no reason to believe that the manner in which the plaintiffs were being compensated violated the FLSA or any other laws or that they may have been working more than 60 hours per week. *Id., p. 95; Bliss' Declaration, ¶2.*

Approximately a month later, Bliss "started hearing comments" about the pay of the employees again. *Id., p. 49.* Therefore, he **voluntarily** contacted a Houston employment attorney, Mark Levine, and his associate, Maricarmen Dollar, to seek legal advice regarding the pay situation. *Id., pp. 49, 140.* He first spoke to Ms. Dollar on April 4, 2006 and explained the pay situation to find out if they were "doing things properly here or if we're not and if we're not, what kind of problem do we have, how can we solve it." *Id., p. 50.* They discussed the pay structure and potential pay plans, and Ms. Dollar told him she would research the issue and get back to him. *Id., p. 51.* On June 20, 2006 Ms. Dollar sent him a memorandum regarding a problem in the method the workers were being compensated and suggesting an alternate method to pay the employees. *Id., pp. 51-52, 153.* However, prior to receiving that memorandum, Bliss spoke to Mr. Levine in which he was informed that they could use the fluctuating workweek method to show that the manner in which the plaintiffs were being compensated was sufficient. *Id., p. 58-59.* Mr. Levine informed Bliss that even if it was determined that the method in which the plaintiffs were actually being paid was technically in violation of the FLSA, if their amount of compensation would be sufficient based on the fluctuating workweek method, then there

could be no adverse legal ramifications. *Bliss' Declaration, ¶3.* Therefore, because he relied on the attorney's advice and as shown by the spreadsheet presented to the three workers on February 19, 2006, Bliss had no reason to believe that a technical violation of the FLSA would have been a problem. *Id.*

June 20, 2006, when Bliss received Ms. Dollar's memorandum, was the first time he became aware that the method of compensating the plaintiffs, as set up by White, was technically a violation of the FLSA. *Id., pp. 51-52, 164-165.*[3] However, based on Bliss' understanding from Mr. Levine that a technical violation of the FLSA was irrelevant because the actual amount the plaintiffs were being compensated was **more** than they would be earning if RigStaff changed the method of compensation to be in compliance with the FLSA, Bliss had no reason to believe that RigStaff needed to actually change the pay structure. *Id., p. 55; Bliss' Declaration, ¶4.*

Furthermore, Bliss had been informed in early February that Schlumberger may have a problem with their agreement because Schlumberger was having problems obtaining Commercial Drivers Licenses for the workers because of their H-2B visa status. *Bliss Dep., p. 24.* In June 2006, Schlumberger conclusively made the decision to terminate its contract with RigStaff earlier than promised, thus requiring Bliss to urgently locate alternative employment for the workers. *Id., pp. 53-54.* Therefore, a further reason Bliss was not in a position to attempt to modify the pay structure of all the employees was because of his need to locate alternative employment for these workers. *Id., pp. 54-55.* Bliss was in fact successful in locating alternative employment for a majority of the workers, including the two named plaintiffs, and implemented a pay practice that was clearly in compliance with the FLSA. *Id., p. 134; Bliss' Declaration, ¶5.*

Therefore, because Bliss was unaware of the potential legal problem in the pay system

---

[3] All the available documented correspondence between Bliss and the attorneys are attached as Attachment 1 to Exhibit E.

that White set up until approximately April 2006, actively took steps to determine the proper method of compensating the employees by seeking legal advice from attorneys, was not aware of a technical violation of the FLSA until June 20, 2006, was under the impression that modifying the pay structure of the employees to technically comply with the FLSA would have resulted in the plaintiffs receiving less compensation, was focusing his efforts on locating alternative employment for the workers, and did in fact change the pay structure of the workers in their subsequent employment, he acted reasonably in attempting comply with the FLSA.[4] Therefore, he did not willfully violate the FLSA, summary judgment is appropriate on this issue, and Bliss must be dismissed from this lawsuit.

## CONCLUSION AND PRAYER

Based on the foregoing reasons, the defendants request that the Court find that Bliss and DeLorenzo did not have operational control of RigStaff and, therefore, cannot be liable for any potential violation of the FLSA based on the allegations in this lawsuit. In the alternative, the defendants request that the Court find that Bliss and DeLorenzo did not willfully violate the FLSA, and, therefore, still cannot be liable for any potential violation of the FLSA based on the allegations in this lawsuit.

---

[4] In fact, considering Bliss voluntarily consulted an attorney, a finding that Bliss willfully violated the FLSA may likely result in a harmful precedent that would encourage employers NOT to seek the advice of counsel to determine compliance with the FLSA.

Respectfully submitted,

| | |
|---|---|
| | */s/ Nitin Sud* |
| | R. Shawn Oller (N.M. Bar No. 8787) |
| Nitin Sud | LITTLER MENDELSON, P.C. |
| Texas State Bar No. 24051399 | 2425 East Camelback Road, Suite 900 |
| LITTLER MENDELSON, P.C. | Phoenix, AZ 85016 |
| 1301 McKinney Street | Telephone: 602.474.3600 |
| Suite 1900 | Facsimile: 602.957.1801 |
| Houston, TX 77010 | soller@littler.com |
| 713.951.9400 (Telephone) | |
| 713.951.9212 (Telecopier) | |
| nsud@littler.com | ATTORNEYS FOR DEFENDANTS |
| | RigStaff Texas LLC, RigStaff Ltd., Joseph P. DeLorenzo, and Walter Bliss |

CERTIFICATE OF SERVICE

I certify that on October 8, 2009, I served the foregoing instrument upon all the following counsel of record through the ECF filing system:

William H. Beardall
Equal Justice Center
Transnational Worker Rights Clinic
510 S. Congress Ave.
Suite #206
Austin, TX 78704

Jerome Wesevich
Equal Justice Center
1004 Summit Dr., NE
Albuquerque, NM 87106

Edward Tuddenham
1339 Kalmia Rd. NW
Washington, DC 20012

Benjamin Banta
The Kullman Firm
1100 Poydras St.
Suite 1600
New Orleans, LA 70163

Daniel R. Dolan, II
5801 Osuna Rd NE
Suite 106
Albuquerque, NM 87109

/s/ *Nitin Sud*
Nitin Sud

Firmwide:91669560.1 061678.1001