UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **WELLEM MARCH PAULUS,** | § | |
| **ZAINAL TAMPUBOLON,** | | |
| **EDI TAMTOMO BUDIHARSO,** | § | |
| **DONI EFFENDI BIN RUSMAN,** | | |
| **YULIANTO,** | § | |
| **JEFRRIE JONES RANSULANGI,** | | |
| **ZUL HEPPY,** | § | |
| **JEMMY IWAN TANGKA,** | | |
| **EDVINCO PURIMANHUA,** | § | **CIVIL ACTION NO. 08-1104 BB/ACT** |
| **AGUSLIM BIN THAMRIN,** | | |
| **CHAIDIR BIN CHOLIL,** | § | |
| **DEMCI LENGKING DUMAIS,** | | |
| **HISAR SHAHAT PARULIAN,** | § | |
| **AZHARUDDIN AZIS,** | | |
| **EDWIN FRITS SUMARAUW,** | § | |
| **REYNOLD CAUNANG,** | | |
| **MUJI HARTONO,** | § | |
| **WEIN NICOLAAS TINDANGEN,** | | |
| **VERONEQUE DONNY MAMAHIT,** | § | |
| **ABRAHAM SAUSILAWANE** | | |
| | § | **COMPLAINT FOR VIOLATIONS OF** |
| Plaintiffs, | | **FLSA, 42 U.S.C. 1981, AND STATE** |
| v. | § | **LAW** |
| | | |
| **RIGSTAFF TEXAS, LLC,** | § | |
| **RIGSTAFF, LTD,** | | |
| **SCHLUMBERGER LTD.,** | § | |
| **SCHLUMBERGER TECHNOLOGY CORP.** | | |
| **DOUGLAS L. WHITE,** | § | |
| **JOSEPH P. DELORNZO, and** | | |
| **WALTER BLISS** | § | |
| | | |
| Defendants. | § | **DEMAND FOR JURY TRIAL** |

**FIRST AMENDED COMPLAINT**

-1-

1.   This is an action for damages brought pursuant to the Fair Labor Standards Act, 42 U.S.C. § 1981, and state law by twenty Indonesian workers who were brought to the United States by Defendants under H-2B temporary work visas.  Plaintiffs allege, *inter alia*, that they did not receive overtime as required by the FLSA, were discriminated against because of their alienage, and injured as a result of Defendants state law violations. Plaintiffs seek compensatory, liquidated and punitive damages as well as recovery of litigation costs, attorney fees, and interest.

## JURISDICTION AND VENUE

2.   This Court has jurisdiction over Plaintiffs FLSA and state law claims pursuant to the following:

- a.   28 U.S.C. §1331 (Federal Question);
- b.   28 U.S.C. § 1337 (Interstate Commerce);
- c.   28 U.S.C. §1367 (Supplemental Jurisdiction); and
- d.   29 U.S.C. § 216(b) (FLSA)

3.   In addition, the Court has supplemental jurisdiction under 28 U.S.C. 1367 over Plaintiffs' state law claims because those claims derive from the same common nucleus of operative fact as Plaintiffs' FLSA claims.

## THE PARTIES

4.   Plaintiffs Wellem March Paulus, Zainal Tampubolon, Edi Tamtomo Buiharso, Doni Effendi Bin Rusman, Ylianto, Jefrrie Jones Ransulangi, Zul Heppy, Jemmy Iwan Tangka, Edvinco Purimanhua, Agulim Bin Thamrin, Chaidir Bin Cholil, Demci Lengking Dumais, Hisar

Shahat Parulian, Azharuddin Azis, Edwin Frits Sumarauw, Reynold Caunang, Muji Hartono, Wein Nicolaas Tingdangen, Veroneque Donny Mamahit, and Abraham Sausilawane are citizens of the Republic of Indonesia.

5. Plaintiffs previously filed their forms consenting to sue for FLSA violations pursuant to 29 U.S.C. §§ 216(b) and 256.

6. Plaintiffs are domiciled in Indonesia, a fact that has been known to Defendants at all relevant times.

7. Defendant RigStaff, Ltd. is a limited partnership under the laws of the State of Texas.

8. Defendant RigStaff Texas, LLC is a limited liability corporation under the laws of the State of Texas and is the general partner of Defendant RigStaff, Ltd. As the general partner of RigStaff, Ltd. it is liable for the debts of RigStaff Ltd..

9. Defendant Douglas L. White is an individual domiciled in Texas.

10. Defendant Joseph DeLorenzo is an individual domiciled in Texas and was vice-president at RigStaff Texas, LLC at all times relevant herein.

11. Defendant Walter Bliss is an individual domiciled in Texas.

12. On information and belief, Defendants RigStaff Texas LLC, RigStaff Ltd., White, and DeLorenzo (hereinafter referred to as the "RigStaff Defendants") did business under the assumed names "RigStaff" and "RigStaff, Inc."

13. Defendant Schlumberger Ltd. is a corporation under the laws of the State of New York. Schlumberger Oilfield Services is an operating division of Schlumberger Ltd.

14. Defendant Schlumberger Technology Corporation is a corporation under the laws of the State of Texas.

15. This First Amended Complaint collectively refers to Defendants Schlumberger Ltd. And Schlumberger Technology Corporation as "Schlumberger" or "Schlumberger Defendants."

**FACTS**

16. Sclumberger is one of the world's largest oilfield services companies, with thousands of domestic and foreign employees who work in company operations worldwide, and a corporate history dating back a century. *See* http://www.slb.com/content/about/history.asp

17. At all times relevant herein, Schlumberger was an enterprise engaged in commerce or in the production of goods for commerce as that term is defined by 29 U.S.C. §203(s).

18. The RigStaff Defendants began doing business in 2005 helping find workers for employers in the petroleum industry.

19. Crude oil prices reached historic highs during the 2003 through 2007 period. These high oil prices resulted in historic profits for companies like Schlumberger as domestic oil wells that had long been dormant became profitable, and operational, once again.

20. In 2005, Schlumberger and the RigStaff Defendants conspired and combined to import and benefit from the labor of foreign visa workers through illegal means that deprived Plaintiffs of their rights under federal and state law governing the importation of foreign visa workers.

21. To carry out this scheme, Schlumberger and the RigStaff Defendants agreed that RigStaff, acting as agent for Schlumberger, would obtain visas for the workers in its name and pay them out of the funds that Schlumberger agreed to pay to RigStaff.

22. Schlumberger and the RigStaff Defendants agreed that Schlumberger would have exclusive control over all aspects of the foreign workers' employment, including supervising the details of their work, assigning tasks, setting the hours and locations of their work, and providing all necessary training and equipment. Schlumberger also retained the right to select the workers to be hired from a list prepared by RigStaff.

23. Schlumberger and the RigStaff Defendants agreed that Schlumberger could terminate the workers without cause on 90 days notice.

24. Schlumberger and the RigStaff Defendants further agreed that the workers would be paid a day rate and would not receive premiums for working overtime no matter how many hours of overtime Schlumberger required the foreign workers to work.

25. Schlumberger and the RigStaff Defendants also agreed that, while Schlumberger could assign the workers to work in whatever locations it wanted, they would represent that all of the foreign workers were employed in Farmington, New Mexico.

26. Schlumberger and the RigStaff Defendants agreed that, while Schlumberger could use the workers in whatever job positions it wanted, including as mechanics.

27. In seeking to import and benefit from the labor of foreign visa workers, the Schlumberger and RigStaff Defendants owed a duty to the foreign workers to ensure that they

were imported and employed in compliance with the laws governing the importation of foreign workers.

28. Defendants knew, or at minimum showed reckless disregard for the fact that the above-described agreements not to pay overtime, to allow for termination of workers without cause, to misrepresent the locations and job duties of the workers, and to seek visas in RigStaff's name without listing Schlumberger as an employer or joint employer of the workers violated the requirements of federal law governing the importation of foreign visa workers, as well as the FLSA, the New Mexico Minimum Wage Act and other state laws.

29. Pursuant to Rigstaff's agreement with Schlumberger, the RigStaff Defendants, acting as an agent for Schlumberger, filed a labor certification application, form ETA-750 dated July 27, 2005, with the U.S. Department of Labor (DOL) seeking approval for 40 foreign workers to work as equipment operators during the period November 1, 2005 through November 1, 2006.

30. RigStaff's labor certification application contained material false representations. RigStaff made these representations with knowledge of their falsity or with reckless disregard for the truth of those representations and did so with the intention that DOL and, ultimately the visa workers whose visas would be controlled by the labor certification application, act upon and rely upon the representations. Among other things, the labor certification application fraudulently represented that:

> a. the workers would be employed solely as Equipment Operators in Farmington, New Mexico;

      b.  the workers would be paid $12.53 per hour and $18.80 per hour overtime;

      c. the workers' immediate supervisor would be the President of RigStaff;

      d. the workers would receive at least the prevailing wage in effect at the time the workers began work;

      e. RigStaff had sufficient funds available to pay the workers' wages.

31. RigStaff's labor certification application concealed material facts, which were known to RigStaff and Schlumberger, from DOL with the specific intent that DOL, and ultimately Plaintiffs, be guided by the information they received in their transactions with Defendants. Among other things, the visa application concealed that:

      a. Schlumberger would act as the employer or joint employer of the visa workers, supervising and controlling their hours of work;

      b. the Defendants intended to pay day rates rather than hourly rates;

      c. Schlumberger reserved the right to terminate the work without cause;

      d. the Defendants intended for Schlumberger to assign the workers to locations other than Farmington, NM and to use them in jobs other than equipment operator jobs.

32. In reliance on the fraudulent statements and omissions contained in RigStaff's labor certification application, DOL granted the application.

33. After receiving labor certification from DOL, RigStaff filed a visa petition for H-2B workers with the Department of Homeland Security (DHS) on form I-129 dated Sept. 27, 2005. RigStaff's fraudulent labor certification application was appended to and incorporated into the visa petition. RigStaff's visa petition contained the same material false representations and omissions as its labor certification application. The RigStaff Defendants made these

representations and omissions with knowledge of their falsity, and/or with reckless disregard for the truth of those representations.  Defendants caused these representations to be made and did so with the intention that DHS and, ultimately, the workers themselves, whose visas would be controlled by terms of the visa petition, would act upon the representations.

34. In reliance upon the false statements and omissions contained in the visa petition and the attached labor certification application, DHS granted the requested H-2B visas.

35. Although Schlumberger and the RigStaff Defendants had agreed that Schlumberger would act as an employer of the workers, Schlumberger did not file a visa petition and labor certification application of its own, in violation of Department of Homeland Security requirements.

36. Schlumberger knew of, or showed reckless disregard for, the false and misleading statements that RigStaff made to DOL and DHS and continued to participate in its agreement with RigStaff and to aid and abet RigStaff in its efforts to obtain visas for Plaintiffs.

37. Pursuant to its agreement with Schlumberger, the Rigstaff Defendants recruited potential workers in Indonesia and submitted their resumes to Schlumberger.

38. Schlumberger selected the workers that it wanted to hire from the candidates provided by RigStaff.  Plaintiffs were among the workers selected by Schlumberger.

39. On or about November 2005, the RigStaff Defendants, acting pursuant to its agreement with Schlumberger, offered work contracts to the workers selected by Schlumberger.

40. The contracts offered to Plaintiffs included, *inter alia*, the terms set forth in two documents entitled "Letter Agreement Establishing Employer and Employee" and "Letter

Agreement Establishing Employee's Understanding of Employee Rights and Obligations Regarding Employment in the United States of America."

41. The work contracts offered to Plaintiffs informed them that they would be sub-contracted to work for Schlumberger, would receive housing at no cost, would be reimbursed for food and incidentals and that they would work until November 1, 2006.

42. The work contracts offered to Plaintiffs incorporated, as a matter of law, the additional work terms set forth in (1) RigStaff's visa applications; (2) the provisions of Indonesian law, Art. 62 of Law No. 13 of 2003 concerning Labor Affairs; and (3) the provisions of the laws and regulations governing H-2B visas.

43. The work contracts offered to Plaintiffs contained material false representations. The RigStaff Defendants made these representations with knowledge of their falsity or with reckless disregard for the truth of those representations and did so with the intention that Plaintiffs act upon and rely upon the representations. The false representations made by the RigStaff Defendants included promises that:

    a. the workers would be paid $12.53 per hour and no less than the prevailing wage as set by the U.S. Department of Labor for the position and the location where the worker would be employed.

    b. the workers would be employed for the term ending November 1, 2006 based on satisfactory performance;

44. The work contracts offered by RigStaff failed to disclose material facts that were within the knowledge of Defendants and that Defendants knew were not within the Plaintiffs' knowledge. Defendants concealed these material facts with actual knowledge that Plaintiffs did not have equal opportunity to discover the true facts and with the intent to induce Plaintiffs to

work for Schlumberger. Among other things, the RigStaff Defendants failed to inform Plaintiffs that it had previously agreed that Schlumberger was not obligated to pay workers overtime for hours in excess of forty.

45.     The RigStaff Defendants also failed to disclose that Schlumberger could assign workers to locations other than the location listed in the visa application and that they would be paid a day-rate for their work rather than an hourly rate plus overtime promised in the visa petition and contract.

46.     Plaintiffs relied to their detriment on the false promises and omissions made by RigStaff, and in late 2005 agreed to the offered contracts and traveled to the United States to work for Schlumberger.

47.     The Schlumberger Defendants knew of or showed reckless disregard for the false and misleading information that RigStaff provided to Plaintiffs in order to induce them to come to the United States to work for Schlumberger and continued to participate in its agreement with RigStaff so that it could benefit from Plaintiffs' labor.

48.     Prior to Plaintiffs' arrival in the United States, Defendant Walter Bliss replaced Defendant Doug White as President of RigStaff with principal authority for carrying out RigStaff's contractual obligations to Schlumberger and the Plaintiffs.

49.     Defendant Bliss aided, abetted, and conspired in RigStaff's fraudulent scheme to obtain foreign workers by, *inter alia*, participating in and benefitting from the scheme knowing that RigStaff had obtained the workers through the fraudulent and illegal representations described above or with reckless disregard for the unlawful actions of RigStaff.

50. Defendants concealed or failed to disclose material facts to Plaintiffs concerning their employment that were within the knowledge of Defendants, and that Defendants knew or should have known were not within the knowledge of Plaintiffs, including, *inter alia*, the fact that Plaintiffs were entitled to overtime and were not receiving the prevailing wages for the jobs and the locations where they worked.  Defendants concealed these facts with actual knowledge that Plaintiffs did not have equal opportunity to discover the true facts and with the intent to induce Plaintiffs to begin and/or to continue working for Schlumberger.

51. Defendants supplied false information to Plaintiffs, and concealed material facts from Plaintiffs, in the course of Defendants' business and in the course of transactions in which Defendants had a pecuniary interest.  Defendants supplied false information, and concealed information, with the specific intent that Plaintiffs be guided by the information that Defendants caused Plaintiffs to be provided for Plaintiffs use in Plaintiffs' transactions with Defendants.

52. Defendants Rigstaff and Schlumberger failed to exercise reasonable care or competence in obtaining or communicating information to Plaintiffs regarding the transactions described above.

53. Upon arrival in the United States, Plaintiffs began work at Schlumberger's operations in Farmington, New Mexico.

54. Schlumberger subsequently assigned Plaintiffs Edi Tamtomo and Abraham Sausilawane to work as mechanics for Schlumberger in Colorado, assigned Hisar Shahat, Azharuddin Azis, Jemmy Iwan, and Edvinco Purimanhua to work for Schlumberger in Wyoming, assigned Wein Nicolaas, Jeffrie Jones, Zainal Tampubolon, Wellem Paulus,

Veroneque Donny, Demci Lengking, and Reynold Caunang to work for Schlumberger in Utah; and assigned Muji Hartono to work as a mechanic in New Mexico. The remaining Plaintiffs were assigned to work in New Mexico.

55. At all times during Plaintiffs employment, Schlumberger exercised exclusive control over Plaintiffs' work. Schlumberger supervised and controlled all of the details of Plaintiffs' work. Schlumberger assigned duties to the individual Plaintiffs, set their hours of work, the locations of their work, and the details of the manner in which Plaintiffs were to accomplish their assigned work. Schlumberger provided all of the training Plaintiffs received and supplied all equipment used by Plaintiffs.

56. RigStaff exercised no control whatsoever over Plaintiffs work. No RigStaff personnel were present at the job sites and no RigStaff personnel ever observed Plaintiffs performing the work at issue.

57. Schlumberger routinely assigned individual Plaintiffs in excess of 40 hours of work per week.

58. Schlumberger kept track of the days and hours Plaintiffs worked but reported only the days of work to RigStaff.

59. Pursuant to its agreement with Schlumberger, RigStaff paid the Plaintiffs out of the funds provided to RigStaff by Schlumberger.

60. Contrary to the promises made to DOL, DHS and Plaintiffs, Defendants did not pay by the hour, nor did they pay Plaintiffs the prevailing wage set by DOL for the jobs

Plaintiffs performed in the locations where they worked. Instead Defendants paid workers a flat sum per day with no overtime premium for hours worked in excess of 40 hours per week.

61. Schlumberger continued to employ Plaintiffs in excess of 40 hours per week and accepted the benefit of their labor knowing, or with reckless disregard for the fact, that they were being paid day-rates, were not receiving overtime for their work, and were not being paid in compliance with the requirements of their contracts and the laws governing the importation of foreign workers.

62. At all times relevant herein, Plaintiffs performed labor or services for Schlumberger in the locations to which they were assigned by Schlumberger and did so in a satisfactory manner.

63. While working for Defendants, Plaintiffs were engaged in the production of goods for commerce.

64. On or about August 22, 2006, Schlumberger unilaterally terminated Plaintiffs' employment and its contract with RigStaff, thereby forcing Plaintiffs to return to Indonesia.

65. At all times relevant herein, Schlumberger, the RigStaff Defendants and Walter Bliss were employers of Plaintiffs for purposes of the FLSA and the NMMWA and wilfully failed to pay wages in compliance with those Acts.

66. At all times relevant herein, Schlumberger and the RigStaff Defendants were employers of Plaintiffs bound by the terms of the contract entered into by Plaintiffs in Indonesia.

67. Alternatively, if Schlumberger was not bound by the terms of the contract Plaintiffs entered into in Indonesia, an implied-in-law and/or implied-in-fact contract existed

between Schlumberger and Plaintiffs. This contract required Schlumberger, *inter alia*, to pay Plaintiffs in compliance with the terms of the visas under which Plaintiffs worked, including, *inter alia*:

> a. Payment of no less than the prevailing wage set by DOL for the jobs and locations where Schlumberger assigned Plaintiffs to work plus overtime; and,
>
> b. Employment through end of the visa period on November 1, 2006.

68. Schlumberger and RigStaff breached their contracts with Plaintiffs by, *inter alia*, failing to pay them the DOL required prevailing wage and by terminating their employment early without just cause.

69. Alternatively, if no contract existed between Schlumberger and the Plaintiffs, Schlumberger knowingly benefitted from the work performed by the Plaintiff H-2B workers and was enriched thereby, and it would be unjust for Schlumberger to retain that benefit without paying Plaintiffs in compliance with the minimum requirements set by the United States government for the employment of the H-2B workers that Schlumberger knowingly sought and benefitted from.

70. Schlumberger employed U.S. citizen equipment operators and mechanics prior to, during, and subsequent to, employing Plaintiffs in those same positions and same job sites.

71. Schlumberger discriminated against Plaintiffs because of their alienage by treating them less favorably with respect to their wages and other conditions of employment than the U.S. citizen equipment operators and mechanics employed by Schlumberger.

72. The RigStaff Defendants interfered with money owed to Plaintiffs and other class members by wrongfully withholding wages in excess of the amount of money Plaintiffs and other class members owed in taxes and/or withholding tax refunds from IRS owed to the Plaintiffs and class members.

73. Plaintiffs made demands for money owed to them and RigStaff Defendants have refused to deliver the money to the Plaintiffs.

74. Plaintiffs suffered injury, including lost wages, as a result of the above described actions of Defendants.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

75. The above described actions by Defendants violated Plaintiffs' rights under the FLSA for which they are entitled to relief pursuant to 29 USC § 216(b).

### SECOND CAUSE OF ACTION

76. The above described actions by the Schlumberger Defendants violated Plaintiffs' rights under 42 U.S.C. § 1981 for which they are entitled to relief pursuant to that Act.

### THIRD CAUSE OF ACTION

77. The above described actions by Defendants violated the New Mexico Minimum Wage Act, NMSA § 50-4-22, for which Plaintiffs are entitled to relief pursuant to NMSA § 50-4-26.

### FOURTH CAUSE OF ACTION

78. The above described actions by Defendants violated the New Mexico Wage Payment Act, NMSA 50-4-4 and 50-4-5 for which Plaintiffs are entitled to relief pursuant to those same statutes.

## FIFTH CAUSE OF ACTION

79. The above described actions of Defendants violated the provisions of Wyoming Statutes 27-4-104 for which the Plaintiffs who worked in Wyoming are entitled to relief pursuant to 27-4-104.

## SIXTH CAUSE OF ACTION

80. The above described actions of the Schlumberger Defendants violated the provisions of Wyoming Statutes 27-4-114 for which the Plaintiffs who worked in Wyoming are entitled to relief pursuant to Wyoming Statutes 27-4-114.

## SEVENTH CAUSE OF ACTION

81. The above described actions of the RigStaff and Schlumberger Defendants constitute a breach of contract for which Plaintiffs are entitled to relief pursuant to the common law.

## EIGHTH CAUSE OF ACTION

82. The above described actions by the RigStaff and Schlumberger Defendants constitute an unjust enrichment of those Defendants for which Plaintiffs are entitled to relief under the common law.

## NINTH CAUSE OF ACTION

83. The above described actions by the RigStaff and Schlumberger Defendants constitute fraud for which Plaintiffs are entitled to relief under the common law.

## TENTH CAUSE OF ACTION

. 84. The above described actions by the RigStaff and Schlumberger Defendants constitute negligent misrepresentation for which Plaintiffs are entitled to relief under the common law.

## ELEVENTH CAUSE OF ACTION

85. The above described actions by Defendants constitute civil conspiracy for which Plaintiffs are entitled to relief under the common law.

## TWELFTH CAUSE OF ACTION

86. The above described actions by the RigStaff Defendants constitute conversion for which Plaintiffs are entitled to relief under the common law of New Mexico.

## JURY DEMAND

87. Plaintiffs hereby demand a trial by jury of this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A. Award Plaintiffs their unpaid overtime and an equal amount of liquidated damages;

B. Award Plaintiffs their actual damages as a result of Defendants' violations of 42 U.S.C. §1981, breach of contract, unjust enrichment, fraud, negligent misrepresentation, conspiracy and conversion.

C.	Award Plaintiffs punitive damages as a result of Defendants' violations of 42 U.S. C. §1981, fraud, negligent misrepresentation, conspiracy and conversion.;

D.	Award Plaintiffs their costs of suit including expert fees;

E.	Award Plaintiffs their reasonable attorneys' fees pursuant to the FLSA, 42 U.S.C. 1988; Wyoming Stat. 27-4-104; Utah Stat. 34-27-1; and the New Mexico Minimum Wage Act.

F.	Award Plaintiffs Pre-Judgment and Post-Judgment interest, as provided by law;

G.	Award such other and further relief as this Court deems just and proper.

Respectfully Submitted,

/s/ Edward Tuddenham
_____
Jerome Wesevich
D.N.M. Federal Bar No. 0650
Equal Justice Center
1004 Summit Dr., NE
Albuquerque, New Mexico 87106
Telephone: 505-265-9430
Email: jerry@equaljusticecenter.org

William H. Beardall, Jr.
Texas Bar No. 20282300
Equal Justice Center
Transnational Worker Rights Clinic
510 Congress Ave.  Suite #206
Austin, Texas 78704
Telephone: (512) 474-0007
Fax: (512) 474-0008
Email: bill@equaljusticecenter.org

Edward Tuddenham
Texas Bar No. 20282300
1339 Kalmia Rd. NW
Washington, DC 20012
Telephone: 202-249-9499
Fax: 512-413-4863

Email: etudden@io.com